U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED AND FILED
DEC 04 2025
ERIC M. STORMS, CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| VASILIY SHCHEKATUROV, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CONSOLIDATED COMMUNICATIONS )<br>HOLDINGS, INC. d/b/a CONSOLIDATED )<br>COMMUNICATIONS and FIDIUM FIBER; )<br>EUSTIS CABLE ENTERPRISES, LTD.; )<br>ADVANTAGE UTILITIES LLC; )<br>ITG COMMUNICATIONS, LLC; )<br>CS CONTRACT SOLUTIONS LLC; )<br>and DOES 1–20, inclusive, )<br>Defendants. )<br>)<br>) | Civil Action No. _____ |

COMPLAINT

I. INTRODUCTION

1. This civil action arises from an unlawful multi-employer telecommunications contracting system operated and controlled by Consolidated Communications (CCI/Fidium Fiber) and executed through its prime contractors Eustis Cable Enterprises Ltd., Advantage Utilities LLC, ITG Communications LLC (as successor to Advantage), and CS Contract Solutions LLC.

2. Across Maine and Northern New England, Defendants jointly deployed unlicensed subcontractors, untrained technicians, and unsafe 1099 labor to perform regulated fiber-optic construction and installation work. Defendants exercised pervasive control over workforce

conditions while evading licensing requirements, workplace-safety obligations, and employer responsibilities under federal and state law.

3. Plaintiff, a small vendor recruited into this system, personally observed and documented extensive violations of licensing, OSHA, and labor laws, including the use of unlicensed contractors, unsafe aerial and underground work practices, misclassification of technicians, and fraudulent recruitment practices spanning multiple states.

4. After Plaintiff questioned the legality and safety of Defendants' contracting practices—including licensing requirements, worker safety, and the deployment of untrained subcontractors—Defendant CS Contract Solutions retaliated by issuing a threatening cease-and-desist letter accusing Plaintiff of "extortion," attempting to intimidate Plaintiff into silence, and discouraging lawful reporting to OSHA, the IRS, state licensing boards, and other authorities.

5. Plaintiff brings this action to seek redress for Defendants' negligence, unlicensed contracting, negligent hiring and supervision, unsafe work practices, misclassification, fraudulent misrepresentation, and unlawful retaliation. Plaintiff further seeks injunctive relief requiring Defendants to cease unlicensed fiber-optic operations and to comply with applicable licensing, safety, and labor laws.

II. PARTIES

6. Plaintiff Vasiliy Shchekaturov ("Plaintiff") is a natural person residing in Victorville, California. Between 2022 and 2023, Plaintiff worked personally as an individual field technician under AA Tech, a subcontractor performing telecommunications construction and installation work for Eustis Cable Enterprises Ltd. and Advantage Utilities LLC on CCI/Fidium Fiber

projects in Maine and Northern New England. At AA Tech's instruction, Plaintiff created Golden Labor LLC solely for the purpose of receiving payments for this work; all work was personally performed by Plaintiff under the direction and control of AA Tech, Eustis, and Advantage. In 2025, Plaintiff operated WWW Access LLC as a small telecommunications coordination business. During this period, Plaintiff was recruited, approved, and onboarded by CS Contract Solutions LLC ("CS") for potential deployment on future drop-bury and installation/fulfillment work on CCI/Fidium projects. CS added Plaintiff to its Manatal workforce platform with the internal designation of "manager," although Plaintiff held no actual managerial, supervisory, hiring, firing, scheduling, or safety authority. Plaintiff signed onboarding documents with CS but no work was ultimately assigned or performed under CS due to unresolved licensing issues and retaliation after Plaintiff raised safety and compliance questions. Plaintiff has never exercised any managerial or employer-level authority within any Defendant's contracting system.

7. Defendant Consolidated Communications Holdings, Inc. ("Consolidated" or "CCI") is a Delaware corporation with its principal executive offices located at 2116 South 17th Street, Mattoon, Illinois 61938. Consolidated is the parent company that owns and operates the "Fidium Fiber" telecommunications network and provides fiber-optic services throughout Maine, New Hampshire, Vermont, and numerous other states, as confirmed by Consolidated's official service area listings. Consolidated exercises control over the contractor and subcontractor network used to construct, install, and maintain its fiber systems, including the selection and oversight of Eustis Cable Enterprises Ltd., Advantage Utilities LLC, ITG Communications LLC, and CS Contract Solutions LLC for CCI/Fidium projects in Maine and Northern New England. Consolidated acts as the controlling and creating employer on CCI/Fidium worksites under

OSHA's Multi-Employer Worksite Doctrine and is responsible for ensuring contractor licensing, safety compliance, and supervision within its New England operations.

8. Defendant Eustis Cable Enterprises Ltd. ("Eustis") is a Vermont domestic business corporation, Record Number 114023, with its principal office located at 355 East Street, Brookfield, Vermont 05036, as confirmed by the Vermont Secretary of State. Eustis provides aerial construction, underground construction, fiber splicing, tower work, and related telecommunications services throughout the United States. According to the Maine Secretary of State corporate registry, Eustis is not registered or authorized to conduct business in Maine. Despite this, Eustis acted as a prime contractor on CCI/Fidium Fiber projects in Maine, including multi-employer worksites involving aerial telecommunications construction and hazardous operations. Accordingly, Eustis performed telecommunications contracting work in Maine unlawfully and without the required authorization or oversight.

9. Defendant Advantage Utilities LLC ("Advantage") is a foreign limited liability company organized under the laws of the Commonwealth of Massachusetts, MA Entity ID 001130162, and authorized to conduct business in Maine as of March 28, 2024, as reflected in its Maine corporate registration (Charter No. 202401190FC). Advantage maintains its principal business address at 23 South Main Street, Newton, New Hampshire 03858, with additional operational offices in Kingston, NH; St. Johnsbury, VT; and multiple locations in Maine including Winslow and Gardiner. Advantage performs fiber-optic construction, aerial line work, underground utility work, buried service wire work, splicing, and restoration services on CCI/Fidium projects across Maine and Northern New England.

10. Defendant ITG Communications, LLC ("ITG") is a Texas limited liability company, Texas Taxpayer No. 32052467159 and Texas Secretary of State File No. 0801901679, with foreign

registrations in multiple states including Tennessee (Control No. 000835042). ITG maintains its principal office at 152 Molly Walton Drive, Hendersonville, Tennessee 37075, and operates additional regional facilities including 2400 E. Commercial Boulevard, Suite 1000, Fort Lauderdale, Florida 33308. ITG provides national telecommunications construction, installation, and fulfillment services. On or about November 2025, Advantage Utilities LLC publicly announced that it had been acquired by ITG, and that Advantage's operations would be transitioned under the ITG Communications brand. ITG is therefore the legal successor-in-interest to Advantage for liabilities arising from Advantage's CCI/Fidium operations in Maine and Northern New England.

11. Defendant CS Contract Solutions LLC ("CS") is a New Hampshire domestic limited liability company, Business ID 903365, formed on November 27, 2019, with its principal office located at 165 South River Road, Bedford, New Hampshire 03110. CS is a telecommunications workforce provider operating under NAICS code "All Other Telecommunications," and manages technicians, subcontractors, and labor crews for CCI/Fidium Fiber and other carriers across Maine, New Hampshire, Vermont, Florida, Wisconsin, California, and additional states. CS's principals include Keith Cristobal and Benjamin Sunderland, and its registered agent is attorney Steve Bonnette, Law Office of Steve J. Bonnette PC, 20 Central Square, Suite 2A, Keene, New Hampshire 03431. CS recruited, approved, and onboarded Plaintiff for deployment on CCI/Fidium projects as part of its national contracting network and exercised pervasive control over workforce performance, training, and operational standards.

12. At all relevant times, each Defendant acted directly or indirectly as an employer, joint employer, controlling employer, and/or creating employer within a multi-employer fiber-optic contracting system. Defendants jointly exercised control over worker selection, onboarding,

training, performance standards, safety procedures, and operational requirements affecting Plaintiff and similarly situated workers.

13. The true names and capacities of Defendants DOES 1–20 are presently unknown to Plaintiff, who therefore sues these defendants under fictitious names. Plaintiff alleges that each DOE defendant participated in, supervised, directed, controlled, or otherwise contributed to the unlawful acts, negligence, misclassification practices, safety violations, and other misconduct described in this Complaint. Plaintiff will amend this pleading to allege their true names and capacities once they are identified through discovery. Plaintiff is informed and believes that DOES 1–20 include supervisors, managers, safety personnel, quality-control personnel, dispatch coordinators, and other individuals or entities whose identities are currently unknown but who played material roles in the events at issue.

III. JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises in part under federal law, including OSHA's anti-retaliation provisions and federal labor and safety regulations incorporated into the claims asserted herein.

15. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a), as the amount in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity exists between Plaintiff—a citizen of California—and all Defendants, who are citizens of Delaware, Illinois, Vermont, Massachusetts, New Hampshire, Texas, Tennessee, and Florida.

16. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

17. Personal jurisdiction exists over all Defendants because they have purposefully availed themselves of the privilege of conducting business in Maine. Defendants recruited workers into Maine, contracted to perform fiber-optic construction and installation work in Maine, dispatched and supervised crews in Maine, and exercised control over multi-employer job sites located in Maine.

18. Defendants Eustis Cable Enterprises Ltd. and Advantage Utilities LLC performed fiber-optic construction, installation, and splicing work on CCI/Fidium projects in Maine, and Defendant ITG Communications LLC is the successor-in-interest to Advantage Utilities LLC with respect to those operations. Defendant CS Contract Solutions LLC recruited Plaintiff for anticipated deployment on CCI/Fidium projects in multiple states, including CCI buried service wire work in Florida and installation/fulfillment work in Maine and Northern New England. CS provided Plaintiff with CCI/Fidium SOW documents for both regions, informed Plaintiff that CCI had "immediate needs" in Florida and as many as thirty open technician positions in Northern New England, and invited Plaintiff to participate in CCI projects once onboarding was completed. Although Plaintiff did not sign a standalone CCI-specific master contract and did not perform any work on CCI projects, CS nevertheless included Plaintiff in CCI-related training and operational communication channels and exercised workforce management, training, and deployment oversight connected to CCI's multi-state operations. Defendant Consolidated Communications Holdings, Inc. owns and operates the Fidium Fiber network and controlled the

contractor structure used to perform CCI/Fidium work in Maine, Florida, and Northern New England.

19. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District, including the performance of fiber-optic construction and installation work on CCI/Fidium projects, the deployment of unlicensed subcontractors, the occurrence of unsafe multi-employer worksite conditions, and the recruitment and attempted deployment of Plaintiff into CCI's Maine operations.

20. Venue is further proper because Defendants regularly conduct business in Maine, maintain operations or job sites within Maine, and committed tortious acts and omissions affecting workers on Maine telecommunications projects.

## IV. FACTUAL ALLEGATIONS

21. Consolidated Communications Holdings, Inc. ("CCI") operates the "Fidium Fiber" network throughout Maine and Northern New England using a multi-tiered contracting model built around prime contractors and subcontractors. CCI relies on entities such as Eustis Cable Enterprises Ltd. ("Eustis"), Advantage Utilities LLC ("Advantage"), ITG Communications LLC ("ITG"), and CS Contract Solutions LLC ("CS") to perform construction, splicing, buried service wire, and installation work for its fiber-optic network.

22. CCI exercises centralized control over the planning, installation, and maintenance of its Fidium network, including the selection, onboarding, and oversight of prime contractors and subcontractors. CCI's contractor network performs work on CCI-owned utility poles, rights-of-

way, buried service wire routes, aerial lines, and residential and commercial fiber-installation sites across Maine.

23. CCI deploys its projects through a multi-employer worksite structure in which prime contractors such as Eustis and Advantage assign field technicians and subcontractors to perform regulated telecommunications tasks under CCI's operational standards, dispatch procedures, quality-control requirements, and training directives.

24. Eustis and Advantage each acted as CCI prime contractors in Maine and Northern New England, dispatching workers—including Plaintiff during his 2022–2023 employment under AA Tech—onto CCI/Fidium projects without verifying proper licensing, OSHA training, or safety qualifications. Eustis, a Vermont corporation, was not authorized to conduct business in Maine when performing this work.

25. In 2025, Defendant CS Contract Solutions LLC recruited Plaintiff into its national workforce system for deployment on CCI drop-bury, buried service wire, and installation/fulfillment projects in Maine, New Hampshire, Vermont, and Florida. CS onboarded Plaintiff through contractor intake forms, email communications, document submissions, insurance and compliance review, and internal classification on the Manatal workforce platform.

26. CS added Plaintiff to the Manatal platform under the internal designation of "manager," despite the fact that Plaintiff held no supervisory, managerial, or safety authority. CS's designation of Plaintiff as a "manager" was inaccurate and reflected misclassification practices within CS's contracting model rather than any actual managerial responsibility held by Plaintiff.

27. CS provided Plaintiff with multiple Statements of Work ("SOWs") and onboarding materials for CCI/Fidium Fiber projects, including SOWs for buried service wire ("BSW") work in

Florida, installation and fulfillment technician roles in Maine and Northern New England, and drop-bury opportunities in Wisconsin and California for Frontier Communications projects. These SOWs stated that CS was actively staffing CCI jobs throughout New England.

28. Through onboarding communications, CS informed Plaintiff that CCI had immediate workforce needs for installation, fulfillment, and buried-service-wire technicians in multiple states, including Florida and Northern New England. CS represented that Plaintiff and his technicians would be deployed once their candidate profiles were uploaded to the CS Vendor Portal. CS did not request or verify any state-required low-voltage or telecommunications licensing for CCI projects, and the only information requested for "CCI Tech Submittals" consisted of basic identification details for badge creation, including name, address, contact information, last four digits of Social Security number, driver's license images, and a mother's maiden name, as reflected in CS's Sub Partner Candidate Submittal Form. CS did not inform Plaintiff that any state licensing was required for CCI work and made no effort to verify legal qualifications before attempting to deploy technicians onto regulated fiber-optic projects.

29. CS's internal communications and recruitment discussions demonstrated that CS exercised pervasive control over technician onboarding, job assignment, dispatch availability, training schedules, KPI monitoring, and workforce distribution for CCI/Fidium operations in Maine and Northern New England.

30. CS maintained multiple operational Telegram groups and communication channels used to direct workforce activity for CCI's New England region, including channels titled "CCI NNE – KPI's & NPS," "CS CCI NNE Training," and "Fidium NNE General Chat." These channels included dozens of subcontractors, field leaders, and supervisors from CS, ILAN Builders, Real Future Communications, and other sub-primes feeding labor into CCI's New England projects.

31. The members of these operational channels included individuals functioning as supervisors, field leads, and project-management personnel for CCI and CS, including Chris Santos, who was identified in CS's CCI/Fidium Statement of Work as the "Supplier Project Manager" responsible for subcontractor oversight, and who appeared in CS's Vendor Management communication channels distributing deployment information and workforce directives. Other individuals appearing in these groups included regional leads such as Garrett Clemmons ("CCI NNE"), Jacob Hill ("CCI NNE"), and Del Halter ("NH Lead"), each of whom communicated operational expectations, KPI requirements, training updates, and work-assignment information for CCI/Fidium projects in Maine and Northern New England.

32. Through these channels, and through CCI's proprietary digital platforms used to assign work orders, dispatch technicians, track job progress, and activate customer equipment, Defendants CCI and CS jointly controlled day-to-day work processes, installation standards, scheduling, task assignments, KPI-tracking, and workforce performance for technicians working on CCI/Fidium Fiber projects in Maine and Northern New England. CCI's job-assignment and equipment-activation systems functioned as centralized operational tools that dictated technician workflows, required specific installation procedures, and determined task completion, further demonstrating that CCI exercised direct employer-level control over subcontractor labor within its multi-employer contracting network.

33. Plaintiff discovered that technicians working for Eustis, Advantage, CS, and other subcontractors under the CCI contracting chain regularly performed regulated telecommunications work—including aerial construction, buried service wire installation, and residential fiber installation—without holding the required state licenses, without OSHA safety training, and without proper supervision.

34. Defendants did not maintain any effective system for verifying workers' qualifications, licensing, or safety training before deploying technicians into hazardous aerial and underground environments on CCI/Fidium job sites. While CCI exercised tighter, centralized control over installation and fulfillment operations — including dispatching, job assignments, and activation workflows — CCI exerted significantly less oversight over construction and aerial operations performed by Eustis and Advantage. As a result, CCI relied on prime and sub-prime contractors to supply construction labor without ensuring proper licensing, training, or safety compliance. Defendants knowingly accepted unlicensed and untrained workers into both construction and fulfillment activities, with fulfillment operations functioning under direct CCI/CS control and construction operations occurring with inadequate or nonexistent CCI oversight.

## V. CAUSES OF ACTION

COUNT I – Negligence

(Against All Defendants)

Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

Each Defendant owed Plaintiff, and similarly situated workers, a duty to exercise ordinary care in the selection, hiring, deployment, and supervision of subcontractors, technicians, and workers performing regulated fiber-optic construction, buried service wire, and installation/fulfillment work.

Defendants breached this duty by deploying unlicensed, untrained, and inadequately supervised technicians on hazardous aerial and underground job sites; failing to ensure compliance with OSHA and state safety laws; and allowing unsafe work practices to become normalized across CCI's fiber network.

Defendants further breached their duty by failing to implement adequate safety policies, failing to monitor contractor compliance, and failing to correct known hazards, including the systemic safety violations publicly displayed by Advantage Utilities LLC and those previously resulting in a fatality on a CCI multi-employer job site.

As a direct and proximate result of Defendants' negligence, Plaintiff suffered harm including loss of business opportunity, lost income, reputational injury, emotional distress, and other damages in an amount to be proven at trial.

COUNT II – Negligence Per Se (Unlicensed Contracting)

(Against CCI, Eustis, Advantage, ITG, and CS)

Plaintiff realleges and incorporates the foregoing paragraphs.

Maine, Vermont, Massachusetts, New Hampshire, Florida, and other relevant states require telecommunications, low-voltage, or underground utility workers to hold appropriate licenses or registrations before performing regulated work.

Eustis Cable Enterprises Ltd., Advantage Utilities LLC, CS Contract Solutions LLC, and ITG Communications LLC deployed workers — including Plaintiff and dozens of other technicians — without verifying licensing status, despite operating in states where licensure is mandatory.

Eustis Cable Enterprises Ltd. was not registered or authorized to conduct business in Maine during the relevant period in which it performed fiber-optic construction for CCI/Fidium, and Advantage Utilities LLC operated in Maine as a foreign LLC while failing to verify the required qualifications or licensing of its subcontractor workforce.

Defendants' use of unlicensed workers on regulated fiber-optic construction and installation work constitutes negligence per se, because it violates state contractor-licensing statutes enacted to protect the public and workers from precisely these risks.

As a result of these statutory violations, Plaintiff suffered damages including lost economic opportunity, exposure to legal and regulatory risk, and other harms.

COUNT III – Negligent Hiring, Supervision, and Retention

(Against CCI, Eustis, Advantage, ITG, and CS)

Plaintiff realleges and incorporates the foregoing paragraphs.

Each Defendant had a duty to reasonably hire, supervise, and retain competent contractors and workers performing hazardous telecommunications tasks.

Defendants breached this duty by hiring and retaining subcontractors known to be unlicensed, untrained, or unsafe; by assigning operational authority to individuals who failed to enforce safety or licensing requirements; and by failing to implement any system of verification or oversight.

Defendants further breached their duty by entrusting worker deployment to sub-prime contractors and coordinators, including CS and AA Tech, without ensuring compliance with licensing or safety standards.

As a direct and proximate result of Defendants' negligent hiring and supervision, Plaintiff suffered economic, professional, and other harm.

COUNT IV – Misclassification and Joint Employer Liability

(Against CCI, Eustis, Advantage, ITG, and CS)

Plaintiff realleges and incorporates the foregoing paragraphs.

Defendants jointly operated a multi-employer labor system in which workers were labeled as independent contractors or vendors, despite being managed, dispatched, directed, and evaluated in a manner consistent with employee status.

CCI and CS exercised direct control over technician assignment, scheduling, KPI and NPS scoring, job sequencing, equipment activation, performance expectations, and training requirements.

Eustis, Advantage, and ITG likewise exercised field-level supervisory authority over technicians while simultaneously disclaiming employer responsibilities.

The degree of control exercised by all Defendants constitutes joint-employer status under federal and state law. Plaintiff and similarly situated workers were therefore misclassified, deprived of legal protections, and exposed to unnecessary risk.

As a result of this misclassification, Plaintiff suffered economic damages, diminished business prospects, and other injuries.

COUNT V – Fraud and Misrepresentation

(Against CS, Eustis, Advantage, and ITG)

Plaintiff realleges and incorporates the foregoing paragraphs.

Defendants misrepresented the nature of the work, the legal requirements to perform it, and the conditions under which Plaintiff and other workers would be deployed. Defendants concealed that state licensing and OSHA compliance were required to perform regulated fiber-optic work, and falsely presented their labor systems as lawful and compliant.

CS Contract Solutions LLC further misrepresented Plaintiff's role by classifying him internally as a "manager" in its Manatal platform despite Plaintiff holding no supervisory authority, and misled Plaintiff by suggesting he and his technicians would be deployed on CCI projects without disclosing licensing requirements.

These misrepresentations were material, false, and intended to induce Plaintiff to enter Defendants' contracting system without informed consent.

Plaintiff reasonably relied on these misrepresentations and suffered harm when Defendants' unlawful contracting system collapsed under scrutiny and when CS retaliated against Plaintiff for raising licensing and safety concerns.

COUNT VI – Retaliation

(Against CS)

Plaintiff realleges and incorporates the foregoing paragraphs.

Plaintiff engaged in protected activity by questioning safety conditions, licensing requirements, and compliance issues related to regulated fiber-optic work.

In response, CS Contract Solutions LLC issued a cease-and-desist letter falsely accusing Plaintiff of extortion, attempting to intimidate Plaintiff into silence, and discouraging Plaintiff from reporting violations to OSHA, licensing authorities, and other regulators.

CS further retaliated against Plaintiff by removing him from operational workforce channels, including the "CCI NNE – KPI's & NPS" operational chat, after Plaintiff raised concerns regarding safety and licensing compliance.

CS's retaliatory conduct violates OSHA Section 11(c), common-law retaliation doctrine, and public-policy protections guaranteeing the right to report unlawful and unsafe practices.

As a direct and proximate result of this retaliation, Plaintiff suffered economic loss, reputational harm, emotional distress, and other damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against all Defendants, and award the following relief:

1. Compensatory damages in an amount to be determined at trial, including damages for economic losses, lost business opportunities, reputational harm, and emotional distress.

2. Statutory damages and penalties arising from Defendants' violations of state contractor-licensing laws, safety statutes, and related regulations.

3. Damages arising from Defendants' negligence, negligence per se, negligent supervision, and misclassification practices.

4. Damages arising from CS Contract Solutions LLC's unlawful retaliation, including damages authorized under OSHA Section 11(c) and applicable state law.

5. Restitution or disgorgement of any financial benefits obtained by Defendants through the use of unlicensed labor or unlawful subcontracting practices.

6. Injunctive relief requiring Defendants to cease unlicensed fiber-optic work in Maine and any other state where they are not properly licensed or registered.

7. Injunctive relief requiring Defendants to implement lawful safety, training, and licensing verification procedures for all personnel deployed on CCI/Fidium projects.

8. A declaratory judgment finding that Defendants jointly operated an unlawful multi-employer contracting system that violated applicable labor, licensing, and safety laws.

9. Pre-judgment and post-judgment interest as permitted by law.

10. An award of costs and expenses incurred in this action.

11. Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Vasiliy Shchekaturov

Dated: November, 29 2025

Vasiliy Shchekaturov, Pro Se

15582 10th Street

Victorville, CA 92395

Email: vasiliy.shchekaturov@wwwaccess.net